DAVISON v. ROBERTSON, *Appellant.*

**Conflicting Execution Titles:** EQUITY FOR REIMBURSEMENT OF PUR-CHASE MONEY AND TAXES; MISTAKE. A tract of land which had been conveyed by an erroneous description was levied upon successively by two judgment creditors of the purchaser, and each bought at his own sale. The levy of the first creditor was made after his execution had expired, and the sheriff's deed therefore conveyed no title. He, however, took possession, and for several years paid the taxes. Afterwards, to protect himself against the other creditor, whose proceedings had been regular, he procured from the heirs of the original owner a deed conveying the land by a correct description. In an equitable proceeding to settle the title; *Held*, that the second creditor was entitled to a decree vesting in himself the title so acquired by the other, and this without making compensation for the cost of acquiring it or the taxes he had paid.

*Appeal from Andrew Circuit Court*—HON. HENRY S. KELLEY, Judge.

This is a suit to divest the defendant of all title to the n e qr., n w qr. Sec. 15, T. 61, R. 36, in Andrew county, and to have the same vested in plaintiff, and for general relief. It appeared that prior to 1860 this tract of land was owned by one Jacob Bird, who having died intestate, leaving several children, one of them, Eli, bought out the interests of all the others, but by mistake their deed to him described the land as lying in section 14 instead of section 15. On the 9th day of January, 1860, Eli conveyed the land by the same mistaken description, to one Gabriel Long, who took possession of the land in section

15, and exercised acts of ownership over it for some time. On the 15th day of December, 1870, the plaintiff, Davison, commenced a suit by attachment against Long, and caused the writ to be levied on this land. It was subsequently sold under an execution issued upon a judgment rendered in this case, and plaintiff became the purchaser, and received a sheriff's deed in June, 1872.

It appeared, also, that in 1861 defendant, Robertson, and one Laughlin, obtained several judgments against Long, and on the 5th day of September, 1863, executions were issued thereon, returnable on the 5th day of October, 1863. These executions were levied on the land in controversy in March, 1864, and the defendant became the purchaser at a sale under them in April, 1864, and received from the sheriff a deed, describing the land correctly, and went into possession and paid the taxes for several years. In 1872, with full knowledge of plaintiff's attachment proceedings against Long, defendant procured from the heirs of Jacob Bird a quit claim deed to the land in controversy. On the 13th day of December, 1860, Long executed a mortgage in favor of Hail & Knott, upon land described as the s e qr., n w qr., Sec. 14, T. 61, R. 36. In May, 1873, defendant procured from Hail & Knott an assignment of this mortgage and the debt secured by it. Upon these facts the court rendered a decree divesting the legal title out of defendant, and vesting it in plaintiff, and reforming the deeds from the heirs of Jacob Bird to Eli Bird, and from Eli Bird to Long, so as to make them convey the land in section 15, instead of section 14. Defendant appealed.

*William Heren* for appellant.

1. Appellant laid out his money in the purchase of the land, paid the taxes, and took possession, believing that he had a good title, long prior to the assertion of any claim by the respondent. Whether he had the better

legal title or not, he had the prior and better equity, and being in possession of the land in good faith, he had the legal and equitable right to procure the legal title, in order to protect himself in the possession. *Bassett v. Nosworthey*, Lead. Cas. in Equity, Vol. 2. pt. 1, p. 33. 2. The deeds from the heirs of Jacob Bird to Eli Bird, and from Eli Bird to Long, could not be corrected and reformed in this suit, a collateral proceeding. That must be done in a direct suit with the proper parties before the court.

*Bennett Pike, W. S. Greenlee* and *W. W. Caldwell* for respondent.

1. The sheriff's deed to appellant was void. No levy of the execution was made until five months after the writ had become *functus officio*. *Bank of Mo. v. Bray*, 37 Mo. 194; Acts of 1863, p. 20. 2. The heirs of Jacob and Eli Bird were not necessary parties to this suit. Long after respondent's attachment of the land, the appellant procured from these heirs a quit claim deed, conveying to him all their right and title in and to the land; hence they had no interest in the suit whatever. 3. The appellant did not attempt to prove by any one that Long intended to convey the land in dispute by the mortgage, under the assignment of which he claims some right or title in the land.

NAPTON, J.—This case presents difficulties growing out of a somewhat novel and peculiar state of facts. The defendant went into possession of the land in dispute, in 1864, under a sheriff's deed, based on a valid judgment, but of no validity itself, because of the levy of the execution having been made after the return day of the writ. There could be no difficulty in applying to this case the principles decided in *Howard v. North*, (5 Texas 315,) following various decisions in Kentucky, Louisiana and South Carolina, and followed by this court in *Valle v. Fleming*, (29 Mo. 152,) and *McLean v. Martin*, (45 Mo. 393,) if the

debtor, Gabriel Long, had been the party plaintiff. But the plaintiff is a creditor of Long, and in 1870 commenced his attachment suit against this land, and perfected it by a sheriff's deed in June, 1872. In 1871 the defendant procured a quit claim deed from the heirs of Jacob Bird, in whom the legal title was all along vested. This was done with a view to protect his possession, acquired under his purchase in 1864, and he had a right to do this. (Freeman's Ch. R. 123.) Strange to say, the plaintiff adopts this sale and conveyance to save him from the trouble of making the heirs of Bird parties in this suit for a transfer of their legal title; as he says, the defendant has already acquired it, and he insists on a transfer of this legal title of defendant to him, without any compensation for the money defendant paid on his purchase, or the taxes he paid for nearly ten years. That Long could not do this is clear. The question is, does his creditor in 1870 occupy a better position? Is he entitled to do what Long, the debtor, would not be allowed to do? I am not satisfied to answer this question in the affirmative; but as all the other judges concur that this equity of the defendant does not reach Long's creditor, this judgment must be affirmed.

The purchase of the mortgage of Long to Hail & Knott in December, 1861, by defendant in 1873, cannot avail the defendant in this suit, because he failed to prove that Long intended to convey the tract in controversy, and for aught that appeared, Long may have owned a quarter quarter section in section 14, as described in the conveyance. It was proved by the plaintiff that Bird did not, but it did not follow from this proof that Long may not have owned such land. Judgment affirmed.

AFFIRMED.